No. 23-1625

IN THE
# United States Court of Appeals for the Eighth Circuit

---

Sr. Kate Reid, et al.,

*Plaintiffs-Appellees,*

*v.*

The Doe Run Resources Corporation, et al.,

*Defendants-Appellants.*

---

On Petition for Permission to Appeal from the
United States District Court for the Eastern District of Missouri
No. 4:11-cv-00044-CDP, Hon. Catherine D. Perry

---

## REPLY BRIEF OF DEFENDANTS-APPELLANTS

---

Edward L. Dowd, Jr.
James F. Bennett
Jeffrey R. Hoops
Dowd Bennett LLP
7733 Forsyth Boulevard
Suite 1900
St. Louis, MO 63105

E. Joshua Rosenkranz
Orrick, Herrington &
  Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

*Additional Counsel Listed on Inside Cover*

Thomas P. Berra, Jr.
Michael Hickey
LEWIS RICE LLC
600 Washington Avenue
Suite 2500
St. Louis, MO  63101

Tracie Jo Renfroe
KING & SPALDING LLP
1110 Louisiana Street
Suite 4100
Houston, TX  77002

Robert M. Loeb
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005

Andrew T. Bayman
Geoffrey M. Drake
KING & SPALDING LLP
1180 Peachtree Street NE
Suite 1600
Atlanta, GA  30309

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. iv

INTRODUCTION ............................................................................... 1

ARGUMENT ....................................................................................... 4

    I.    International Comity Compels Dismissal Of This Action ......................................................................................... 4

        A.    The TPA requires dismissal as a matter of comity. ...... 4

               1.    There is no preemption argument presented here ..................................................................... 5

               2.    The TPA strongly supports comity dismissal ....... 8

               3.    That Missouri law does not apply extraterritorially reinforces the appropriateness of dismissal on comity grounds ............................................................. 12

        B.    The traditional comity factors further reinforce the propriety of dismissal ................................................. 15

               1.    Peru's interests support dismissal. ................... 15

               2.    U.S. interests favor dismissal ............................ 21

               3.    Peru is an adequate forum and dismissal would promote judicial economy ........................ 27

        C.    The district court's emphasis on the lack of "true conflict" was legal error. ............................................ 28

        D.    *Nestlé* reinforces that Plaintiffs' claims do not belong in the United States. ....................................... 29

    II.    This Court Cannot And Should Not Overrule The Doctrine of International Comity Abstention ...................... 32

CONCLUSION ................................................................................. 37

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acapolon Corp. v. Ralston Purina Co.*,
827 S.W.2d 189 (Mo. 1992) .......................................................... 25, 26

*Alperin v. Vatican Bank*,
410 F.3d 532 (9th Cir. 2005) ......................................................... 22, 23

*The Belgenland*,
114 U.S. 355 (1885) ..................................................................... 33, 34

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996) ........................................................................... 13

*Canada Malting Co. v. Patterson S.S.*,
285 U.S. 413 (1932) ..................................................................... 33, 34

*Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*,
492 F.3d 484 (4th Cir. 2007) .............................................................. 13

*Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*,
960 F.3d 549 (9th Cir. 2020) .............................................................. 20

*Doe v. Nestle, S.A.*,
906 F.3d 1120 (9th Cir. 2018) ............................................................ 29

*EEOC v. Arabian Am. Oil Co.*,
499 U.S. 244 (1991) ........................................................................... 14

*Friedman v. Boucher*,
580 F.3d 847 (9th Cir. 2009) .............................................................. 13

*GDG Acquisitions, LLC v. Government of Belize*,
749 F.3d 1024 (11th Cir. 2014) .................................................... 23, 34

*Gross v. German Found. Indus. Initiative*,
456 F.3d 363 (3d Cir. 2006) ......................................................... 23, 34

Appellate Case: 23-1625     Page: 4     Date Filed: 10/23/2023 Entry ID: 5328785

*Hartford Fire Ins. Co. v. California*,
   509 U.S. 764 (1993)....................................................................28, 33

*Keoseian v. Von Kaulbach*,
   763 F. Supp. 1253 (S.D.N.Y. 1991)......................................14

*Kiobel v. Royal Dutch Petroleum Co.*,
   569 U.S. 108 (2013)....................................................................13

*Mizokami Bros. of Arizona v. Mobay Chem. Corp.*,
   660 F.2d 712 (8th Cir. 1981).................................................27

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010)....................................................................13

*Mujica v. AirScan, Inc.*,
   771 F.3d 580 (9th Cir. 2014)..............................5, 7, 18, 22

*Museum of Fine Arts, Bos. v. Seger-Thomschitz*,
   623 F.3d 1 (1st Cir. 2010) ......................................................12

*Nestlé USA, Inc. v. Doe*,
   141 S. Ct. 1931 (2021).........................................................3, 29, 30

*New York Life Ins. Co. v. Head*,
   234 U.S. 149 (1914)....................................................................13

*Quackenbush v. Allstate Ins. Co.*,
   517 U.S. 706 (1996)..............................................................34, 36

*Reid-Walen v. Hansen*,
   933 F.2d 1390 (8th Cir. 1991)...............................................24

*Republic of the Philippines v. Marcos*,
   862 F.2d 1355 (9th Cir. 1988)...............................................23

*Sarei v. Rio Tinto PLC.*,
   221 F. Supp. 2d 1116 (C.D. Cal. 2002) .............................23

*Sierra Club v. Chevron U.S.A., Inc.*,
   834 F.2d 1517 (9th Cir. 1987)...............................................11

v

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct.*,
  482 U.S. 522 (1987) ............................................................ 22

*Taylor v. St. Louis Cmty. Coll.*,
  2 F.4th 1124 (8th Cir. 2021) ............................................. 32

*Texas Cmty. Bank, N.A. v. Missouri Dep't of Soc. Servs.*,
  232 F.3d 942 (8th Cir. 2000) .............................................. 7

*Torres v. S. Peru Copper Corp.*,
  113 F.3d 540 (5th Cir. 1997) ................................... 16, 17, 18

*Torres v. S. Peru Copper Corp.*,
  965 F. Supp. 899 (S.D. Tex. 1996) ............................... 16, 17

*Ungaro-Benages v. Dresdner Bank AG*,
  379 F.3d 1227 (11th Cir. 2004) ......................... 5, 6, 12, 22

*United States v. Bestfoods*,
  524 U.S. 51 (1998) .............................................................. 30

*W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*,
  493 U.S. 400 (1990) ............................................................ 35

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
  516 U.S. 199 (1996) ............................................................ 32

*Yee v. City of Escondido*,
  503 U.S. 519 (1992) ............................................................ 20

**Statutes**

Mo. Rev. Stat. § 27.060 ........................................................ 25

Pub. L. No. 110-138, 121 Stat. 1455 (2007) ........................ 6, 7

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ............................... 10

Appellate Case: 23-1625    Page: 6    Date Filed: 10/23/2023 Entry ID: 5328785

Brief of the United States as Amicus Curiae, *Republic of Hungary v. Simon*, No. 18-1447, 2020 WL 5535982 (U.S. Sept. 11, 2020) .................................................................. 33

Harold Hongju Koh, *Foreign Official Immunity After Samantar: A United States Government Perspective*, 44 Vand. J. Transnat'l L. 1141 (2011) .................................... 22

Peruvian Constitution, art. 123 ............................................... 18

Respondent's Counter-Memorial, *Renco Group, Inc. v. Republic of Peru*, No. 2019-46 (Apr. 1, 2022), https://tinyurl.com/4h64hfxw ............................................. 20

Wright & Miller, Fed. Prac. & Proc. § 1270 (2023) .................................. 6

vii

## INTRODUCTION

This case—brought by Peruvian plaintiffs suing over a Peruvian company's industrial emissions in Peru allegedly injuring them in Peru—belongs in Peru. That is clear from the U.S.-Peru Trade Promotion Agreement (TPA), which contemplates domestic legal remedies for domestic environmental injuries. It is further supported by Peru's preeminent sovereign interest in environmental regulation and enforcement in Peru and the U.S. Supreme Court's extraterritoriality jurisprudence. In short, a Missouri jury has no place judging environmental standards and compliance in Peru.

Responding to that undeniable reality, Plaintiffs erect a strawman, arguing the TPA does not *preempt* their state-law claims. But Defendants are not arguing preemption. International comity demands this case be heard in Peru, given the express policy choices articulated in the TPA. It is absurd to posit, as Plaintiffs and the district court do, that the TPA *encourages* claims of Peruvian environmental injury to be brought in the United States (and vice versa), effectively surrendering sovereignty over environmental policy.

1

Plaintiffs next minimize the Peruvian government's interests, as if it were not axiomatic that Peru has an overwhelming interest in adjudicating claims of environmental injury to Peruvians in Peru. They also ignore their expert's opinion attacking Peruvian environmental law and policy as insufficiently protective and downplay Peru's formal protests to this litigation.

Plaintiffs' parallel efforts to inflate the interests of the United States and Missouri are equally unavailing. Faced with the clear federal interest in respecting Peruvian sovereignty, Plaintiffs' principal response is that if this interest were so important the U.S. government would have said so. But the U.S. government has said so, in the TPA. The U.S. government having already articulated its interests, it is not proper to infer anything from the State Department's not sua sponte submitting a Statement of Interest repeating what is already clear in the TPA.

As for Missouri's interests, Plaintiffs pretend this case is primarily about corporate decisionmaking in Missouri. It is not. Whatever decisions Plaintiffs try to attribute to U.S.-based personnel (largely financing decisions), Plaintiffs' theory is that those decisions affected

Appellate Case: 23-1625     Page: 9     Date Filed: 10/23/2023 Entry ID: 5328785

operations in Peru that led to emissions in Peru. The central questions are whether the operation of the La Oroya complex in Peru (1) was reasonable; and (2) complied with Peruvian law. Even Missouri's Supreme Court and Attorney General agree that Peru's interests in setting environmental policy, regulating the operation of industry within its borders, and protecting its citizens from injury far outstrip Missouri's generic interest in corporate conduct abroad.

*Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931 (2021), confirms that the type of corporate decisions here are insufficient to create a nexus to the United States. It is telling that Plaintiffs respond mainly by trying to rewrite both the *Nestlé* opinion and the record evidence here.

Finally, Plaintiffs urge completely overruling international comity abstention. Plaintiffs never raised that argument below—for good reason. The Supreme Court has repeatedly recognized the doctrine's validity in precedent dating back to the nineteenth century. No circuit court has ever disavowed it. This Court should not be the first.

Appellate Case: 23-1625     Page: 10     Date Filed: 10/23/2023 Entry ID: 5328785

# ARGUMENT

## I. International Comity Compels Dismissal Of This Action.

### A. The TPA requires dismissal as a matter of comity.

Our opening brief explained that the district court misinterpreted the TPA, which militates in favor of dismissal based on international comity. OB21-30.[1] The TPA evinces the United States and Peru's commitment to each other's sovereignty on environmental policy and, accordingly, reflects the parties' agreement to use *domestic* legal remedies for *domestic* environmental claims. OB22-25. Allowing one country to interfere with another country's environmental regulation and enforcement is repugnant to the TPA—but that is what Plaintiffs seek to do here by asking a *Missouri* jury to pass judgment on the emissions of a Peruvian smelting facility. OB25-28. Notably, the U.S. Trade Representative who negotiated the TPA agrees that this case conflicts with the TPA. NMA Amicus Br. at 3-4 & n.2.

---

[1] We cite Defendants' opening brief as "OB," Plaintiffs' response brief as "RB," and amicus briefs as "___ Amicus Br." with the name of the lead amicus.

Appellate Case: 23-1625    Page: 11    Date Filed: 10/23/2023 Entry ID: 5328785

1. **There is no preemption argument presented here.**

Plaintiffs try to dismiss the TPA by arguing it does not preempt state-law claims. RB22-28. But we are not arguing that the TPA *preempts* Missouri law. Rather, we are arguing that the United States and Peru's interests *as reflected in the TPA* require dismissal on international comity grounds.

Unlike preemption, comity abstention is not about displacing domestic law, but deciding which forum has a predominant interest in *adjudicating* the case under applicable law. While a relevant international agreement, when present (as here), guides the comity analysis, OB22, comity abstention does not require *any* such agreement, *e.g., Mujica v. AirScan Inc.*, 771 F.3d 580, 615 (9th Cir. 2014), let alone an agreement with a preemption clause.

That is evident from *Ungaro-Benages v. Dresdner Bank AG*, where the relevant agreement "d[id] not provide[] an independent legal basis for dismissal" (like preemption). 379 F.3d 1227, 1235 (11th Cir. 2004). But the agreement nevertheless informed the comity analysis and supported dismissal because it defined the relevant sovereign interests. Contrary to Plaintiffs' assertion, the agreement in *Ungaro-Benages* did

5

*not* say the Foundation would be the exclusive forum for the claims in question, "nor direct[] that all claims be transferred to the Foundation's settlement procedures." *Id.* at 1234. The agreement required the United States "to file a Statement of Interest" requesting dismissal. *Id.* at 1231-32.

Seeking to avoid the TPA, Plaintiffs invoke two further provisions, both inapplicable. The first says "[n]o State law, or the application thereof" should "be declared invalid … [as] inconsistent with the Agreement." Pub. L. No. 110-138, § 102(b)(1), 121 Stat. 1455 (2007). But abstention does not declare any State law invalid; it moves the case to the appropriate forum under whatever law applies. The second provides that no private litigant "shall have any cause of action or defense under the Agreement." § 102(c). But abstention is not a "defense." RB26. A defense "will defeat the plaintiff's claim if it is accepted by the district court." Wright & Miller, Fed. Prac. & Proc. § 1270 (2023). Like forum non conveniens, comity abstention does not

*defeat* a claim—it determines the appropriate forum. *Mujica*, 771 F.3d at 598 (comparing the doctrines).[2]

Plaintiffs also argue the TPA cannot be applied retroactively. RB26. But Defendants' comity arguments do not "apply" the TPA at all, much less retroactively. Rather, the TPA is evidence of the United States and Peru's respective interests, just like a statement submitted by a foreign government or the U.S. government in litigation to articulate its interests.[3] At any rate, Plaintiffs incorrectly fixate on the TPA's 2009 effective date. But Congress approved the TPA in 2007. Pub. L. No. 110-138, 121 Stat. 1455. It thus articulated the United States and Peru's interests the year before Plaintiffs filed this suit, in 2008.

---

[2] *Texas Community Bank*, RB26, merely observed in passing that the defendant's answer listed abstention as an affirmative defense. *Texas Cmty. Bank, N.A. v. Missouri Dep't of Soc. Servs.*, 232 F.3d 942, 943 (8th Cir. 2000).

[3] Plaintiffs' argument that "a clear congressional command" is required for comity dismissal, RB27-28, is a repackaged version of their argument that comity abstention is inherently invalid, RB53-58. As explained below, that is wrong. *Infra* § II.

Appellate Case: 23-1625     Page: 14     Date Filed: 10/23/2023 Entry ID: 5328785

## 2. The TPA strongly supports comity dismissal.

The TPA's text, structure, and purpose all illustrate why Plaintiffs' suit belongs in Peru.  OB23-28.  Plaintiffs do not dispute that Article 18.1 recognizes *Peru's* sovereign authority to regulate Peruvian industry—specifically its right "to establish its own levels of domestic environmental protection and environmental development priorities." But they barely respond to the argument (OB25-27) that this case infringes those sovereign prerogatives by asking a Missouri jury to pass judgment on the operation of the La Oroya complex.  Indeed, Plaintiffs characterize this case as about Defendants "directing the smelter 'to emit excessive levels of toxic substances.'"  RB29.  Whether emissions in Peru are "excessive" is not a question for a Missouri jury, or any U.S. authority.

Plaintiffs try to elide the foreign nature of the claims here by arguing that "Missouri and Peruvian law do not even conflict"—"*except for the Article 1971 defense.*"  RB29 (emphasis added).  Which means they *do* conflict—quite seriously, as Article 1971 is a key part of the case.  OB5-6, 13, 34.  More fundamentally, though, comity does not depend on whether negligence claims in Missouri and Peru have similar

8

elements.  Comity depends on whether it is appropriate for a Missouri jury to sit in judgment of emissions in Peru.  Here, that is particularly inappropriate since Plaintiffs' whole theory, articulated by their expert, is that Peruvian standards are insufficient to protect the environment.  OB11-12, 26.

Article 18.4 reinforces that Missouri is not a proper forum for Plaintiffs' claims.  That provision requires each Party to provide remedies for violations of "*its*" environmental laws.  OB24-25.  The two sovereigns agreed to domestic environmental enforcement.  That means the violations of Peruvian law alleged here are properly litigated in Peru.  OB23-27.

Plaintiffs, echoing the district court, argue the TPA affirmatively requires a U.S. court to hear Missouri-law challenges to emissions in Peru.  RB23-24, RB30; Add.62.  That turns the TPA on its head.  The applicable "law relating to the environment" in Peru is Peruvian law, and the "law relating to the environment" in the United States is U.S. law.  There is no such thing as a Missouri-law challenge to emissions in Peru.  Missouri law has nothing to say about emissions standards in Pennsylvania, much less in Peru.  OB29, OB57-58; *infra* 12-15.

9

Plaintiffs' argument is also contrary to Article 18.3(5) of the TPA, which does not permit either Party "to undertake environmental law enforcement activities in the territory of another Party." Plaintiffs respond by quoting a narrow definition of "law enforcement." RB29. But civil litigation is a form of "environmental law enforcement." OB27-28. "Law enforcement" is defined as "[t]he detection and punishment of violations of the law." *Law Enforcement*, Black's Law Dictionary (11th ed. 2019). That is precisely what civil litigation (and especially punitive damages) does—punish legal violations and deter would-be violators. OB27-28. Even Plaintiffs agree. RB36 (characterizing civil litigation as vindicating state interest in law's "continued enforceability" (citation omitted)).

Contrary to Plaintiffs' assertion (RB29), the extraterritorial enforcement problem is not solved by holding trial in a courthouse in Missouri rather than Peru; what matters is that the emissions being regulated—the subject of the "environmental law enforcement activities"—are "in the territory" of Peru. Art.18.3(5). If the location of the courthouse were dispositive, any U.S. entity—whether the EPA or the Sierra Club—could take enforcement actions against Peruvian

10

facilities so long as they sued in the United States. *Cf. Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1518 (9th Cir. 1987) (discussing the Sierra Club's "citizen enforcement action"). That is no limitation at all and cannot be right.

Plaintiffs resort to arguing that Articles 18.4 and 18.3(5) of the TPA do not *expressly prohibit* U.S. courts from hearing Peruvian claims, or extraterritorial environmental law enforcement activities. RB29-30. That a prohibition is not *express* does not mean it does not exist. Two sovereigns would not negotiate a bilateral agreement painstakingly laying out Peru's obligations to redress environmental injury if they thought Peruvians could simply skip Peruvian remedies and sue in U.S. courts. Moreover, the comity analysis does not require an express prohibition. *Supra* 5-6. Rather, comity asks which forum has the greatest interest in adjudicating claims. The TPA answers the question unequivocally: Peru has the greater interest in adjudicating claims of environmental harm within its borders. That clear sovereign interest cannot be ignored because Plaintiffs believe the sovereigns *could* have been more emphatic.

Appellate Case: 23-1625     Page: 18     Date Filed: 10/23/2023 Entry ID: 5328785

For the same reasons, Plaintiffs cannot dismiss the TPA by characterizing *some* of its language as "prefatory" or "hortatory." RB28. The TPA's articulation of the sovereign interests at play bears directly on the comity abstention inquiry, OB21-23, even if the language is without independent legal force, *Ungaro-Benages*, 379 F.3d at 1235, 1240.[4]

### 3. That Missouri law does not apply extraterritorially reinforces the appropriateness of dismissal on comity grounds.

Plaintiffs try to elide the infringement on Peruvian sovereignty by claiming they are litigating run-of-the-mill Missouri state-law claims. RB22-30. But as explained, Missouri law does not apply to the operation and emissions of the La Oroya complex in Peru. OB29, OB57-58.

Plaintiffs and their amici wrongly suggest that whether Missouri law applies in another country is solely a question of state law. RB45-47; Dodge Amicus Br. at 19-22. Even in the context of applying law in a

---

[4] *Museum of Fine Arts, Bos. v. Seger-Thomschitz*, 623 F.3d 1 (1st Cir. 2010), RB28, is not to the contrary. Addressing preemption (not comity abstention), that decision held the particular agreements at issue did not articulate the "express federal policy" the defendant attributed to them. 623 F.3d at 12-13.

12

sister state, the "principle that state laws may not generally operate extraterritorially is one of constitutional magnitude," "reflect[ing] core principles of constitutional structure." *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 489-90 (4th Cir. 2007). Modern courts have found it "obvious" that state law "does not apply extraterritorially." *Friedman v. Boucher*, 580 F.3d 847, 854 (9th Cir. 2009); *cf. BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571 & n.16 (1996) (citing *New York Life Ins. Co. v. Head*, 234 U.S. 149 (1914), for the proposition that States cannot regulate extraterritorially).[5] This is true of both state statutory and common law. *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115-16 (2013) (applying extraterritoriality principles to common-law claims).

The contention that Defendants directly operated the La Oroya complex—besides being untrue—does not justify treating application of Missouri law as "domestic" rather than extraterritorial. *Cf. Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266 (2010). Every decision Plaintiffs impute to personnel in the United States is, according to

---

[5] *Gore*'s citation of *Head* refutes Plaintiffs' suggestion (RB46-47 n.20) that *Head* is no longer good law.

Plaintiffs, a decision about how to operate a facility in Peru. The environmental regulations and emissions standards governing that facility do not depend on the citizenship of its corporate owner or where particular decisions were made. *Keoseian v. Von Kaulbach*, 763 F. Supp. 1253, 1258 (S.D.N.Y. 1991) ("There is no authority for the proposition that a state's laws follow … its citizens whenever they transact business elsewhere."); *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 246-48 (1991) (U.S. companies' decisions about conduct abroad are not governed by U.S. law unless federal statute specifically applies extraterritorially). Stated otherwise, Peru's right to regulate industry within its borders is not diminished depending on whether a foreigner owns an industrial facility or where it makes decisions affecting emissions.

The district court's portrayal of Plaintiffs' claims as Missouri-law claims subject to a Peruvian law "defense," Add.23-24, does not change the reality that this case is, at its core, about the operation of an industrial complex in the Andes mountains of Peru. The comity question presented here is whether the interests of Peru and the United

14

States, as reflected in the TPA and otherwise, counsel against such a claim proceeding in Missouri instead of Peru. The clear answer is yes.

## B. The traditional comity factors further reinforce the propriety of dismissal.

### 1. Peru's interests support dismissal.

Plaintiffs do not deny Peru's obvious and substantial interest in assessing appropriate emissions at Peruvian industrial facilities and in providing a forum for thousands of Peruvian citizens claiming injury in Peru. OB31-39. Nor do Plaintiffs deny their claims implicate Peru's delicate balancing of competing interests, addressing a mounting environmental disaster while preserving economic development and international investment. OB31-32. In short, they do not contradict the district court's acknowledgment that Peru has a "strong interest" in this case. Add.26. The most they can say is that this lawsuit does not "offend" Peru's "interest strong[ly] enough to" warrant dismissal. RB38 (cleaned up). But their efforts to minimize Peru's interest, RB38-41, fail both legally and factually.

Perhaps the most telling indication Plaintiffs are on thin ice legally is their failure to grapple meaningfully with precedents abstaining on similar facts. OB32-37. Particularly glaring is Plaintiffs'

15

refusal to engage on *Torres v. Southern Peru Copper Corp.*, 113 F.3d 540 (5th Cir. 1997), *affirming*, 965 F. Supp. 899 (S.D. Tex. 1996), which our opening brief discussed at length. In *Torres*, the Fifth Circuit affirmed the district court's dismissal of claims from 700 Peruvian citizens alleging injury from a U.S. corporation's smelting operations in Peru. 113 F.3d at 541. Plaintiffs try to shrug off the case in a short footnote, RB38-39 n.16, purporting to draw two distinctions, both inaccurate. First, they say the plaintiffs' claim in *Torres*, "[u]nlike here," was that "the Peruvian government … participated substantially" in the activities for which the defendant was sued. RB39 n.16 (quoting 113 F.3d at 543). But that is no distinction. The cited section of *Torres* explains that the Peruvian government "owned the [industrial facility at issue] from 1975 until 1994, during which time pollution from the [facility] may have contributed to the injuries complained of by plaintiffs." 113 F.3d at 543. Those are almost exactly the facts here. OB4-6, 37. Second, Plaintiffs wrongly assert that the "lead defendant" in *Torres* (SPCC) was "headquartered" in Peru, RB39 n.16, when "SPCC's headquarters" were actually "in New York." 965 F. Supp. at

16

907.  In sum, *Torres* is on all fours with this case and demonstrates Peru's overwhelming interest in adjudicating Plaintiffs' claims.

Peru's interest here is even more compelling than in *Torres*.  As in *Torres*, the Peruvian government owned and operated the La Oroya complex for decades, with virtually uncontrolled pollution.  And as in *Torres*, the Peruvian government's conduct while operating the La Oroya complex is directly at issue through, for example, Defendants' causation defense.  OB37-38.  But here, there is an additional element Plaintiffs pointedly ignore: their own explicit attack on Peru's regulatory decisions about Doe Run Peru's operation of the La Oroya complex (for example, the ordering of the PAMA projects).  *Supra* 9; OB11-12, 26.

As to the facts Plaintiffs do address, they do not diminish Peru's interests.  Peru protested this litigation through official diplomatic channels—twice, OB34-37, so Plaintiffs try to minimize that protest.  First, they argue Peru's protest deserves less weight because Peru did not file an amicus brief.  RB38-39.  But they cite no case suggesting a court can dismiss a foreign government's protest because that government did not hire U.S. lawyers to file a brief.  And they ignore

17

cases condoning exactly this manner of lodging a state-to-state protest. *See, e.g., Mujica*, 771 F.3d at 611 (Colombia sending démarche to the U.S. Embassy in Bogota); *Torres*, 113 F.3d at 542 (Peru sending letter to the State Department).

Plaintiffs also misleadingly claim the record includes "competing letters" "purporting to reflect the views of the Peruvian government." RB39 (quoting Add.63). Not so. This was the district court's initial view, R.Doc.949, at 56-57, which it ultimately abandoned, Add.62-65, because it is clearly wrong. The "competing" letters Plaintiffs cite are from two members of Peru's Congress to Peru's Ministry of Finance. Pls.App.138-46; R.Doc.640-85; R.Doc.640-86. In Peru, as in the United States, individual Members of Congress have no authority to speak for the government on foreign relations. R.Doc.756-2, ¶¶ 12-16 (declaration of Peruvian law expert). That authority belongs to the President of the Council of Ministers, *see* Peruvian Constitution, art. 123—who lodged one of the protests Defendants cite, OB35. There is, quite simply, no "dispute[]" here. RB39. The letters Defendants cite represent the official position of Peru; the letters Plaintiffs cite do not. R.Doc.756-2, ¶¶ 5-17.

18

Plaintiffs also wrongly deem Peru's statements "tentative." RB39. As the district court acknowledged, the 2017 letter contains a "lengthy recitation of Peru's sovereign interests under the TPA," Add.64-65, and asserts that allowing this action to proceed in U.S. courts would be "inconsistent with the text and spirit" of the Agreement, App.198; R.Doc.545-3, at 7. Contrary to Plaintiffs' assertion, Peru's 2017 letter did not retreat from, but rather fully incorporated, the emphatic language of its 2007 objection. *Id.*; OB35-36.

Our opening brief described how Peru's interest is heightened by its ongoing criminal investigation into Plaintiffs' counsel's recruitment practices. OB9, OB38. Plaintiffs malign Defendants' allegations as "baseless," RB41 n.19, but Peruvian authorities disagree. An update filed in the district court after Defendants filed their opening brief explained that Peruvian authorities have provisionally charged 12 people on Plaintiffs' counsel's recruiting team with criminal offenses. R.Doc.1363, at 3-4; *see* R.Doc.1362-3, at 3-4. Notwithstanding Peru's progress with the criminal prosecution, the fact that this litigation is proceeding in Missouri rather than Peru limits the actions Peruvian

19

authorities can take in response to fraudulent plaintiff-recruitment efforts. OB38.

Plaintiffs protest that any reference to the criminal proceeding is improper. RB41 n.19. But "parties are not limited [on appeal] to the precise arguments they made below," *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992), and "comity is a 'fluid doctrine' that can 'change in the course of the litigation,'" *Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549, 569 (9th Cir. 2020). This Court need not blind itself to evolving facts elucidating Peru's interests in this matter.

Plaintiffs also attempt to downplay Peru's interests by citing excerpts from arbitration between Peru and Defendants. RB40. That arbitration concerns Defendants' efforts to enforce Peru's indemnification obligations arising from, among other things, pre-existing environmental contamination at the La Oroya complex. Respondent's Counter-Memorial, *Renco Group, Inc. v. Republic of Peru*, No. 2019-46, ¶¶ 136-37, 330 (Apr. 1, 2022), https://tinyurl.com/4h64hfxw. The cited statements are unremarkable denials of indemnification liability, say nothing about the proper forum

for Plaintiffs' claims, and do not contradict Peru's official protests of this litigation.

Plaintiffs are also mistaken in asserting that Peru's protests are diminished because Defendants can raise their PAMA defense to the Missouri jury. RB41. That raises two serious insults to Peruvian sovereignty: (1) before getting to that Peruvian *defense*, a Missouri jury would still sit in judgment of emissions in Peru under Missouri law, OB13; and (2) this case involves novel and important questions of Peruvian law and policy Peru has an interest in resolving for itself, OB34.

### 2. U.S. interests favor dismissal.

**a.** Plaintiffs barely address our arguments about why U.S. foreign policy interests favor dismissal. OB39-41. Instead, Plaintiffs dismiss U.S. interests largely because the State Department has not filed a Statement of Interest. RB33-34; Former Diplomats Amicus Br. at 4-6. There is no need for the State Department to submit a Statement of Interest given the TPA's clear articulation of U.S. interests. Moreover, Plaintiffs admit "it is 'unusual' for the State Department to weigh in without invitation." RB34 (quoting OB41); *but see* RB33 (inexplicably

21

suggesting it is "typical[]").  And they do not deny the Department has a "policy" against "tak[ing] positions" in "litigation between private parties, unless [the Department is] required to do so by applicable law." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct.*, 482 U.S. 522, 554 n.5 (1987) (Blackmun, J., concurring in part and dissenting in part).  Thus, as State Department officials have explained, "*no* inference should be drawn from [the State Department's] decision not to participate in the case."  Harold Hongju Koh, *Foreign Official Immunity After Samantar: A United States Government Perspective*, 44 Vand. J. Transnat'l L. 1141, 1160 (2011) (emphasis added); R.Doc.756-3, ¶¶ 6-7 (similar).

Consistent with State Department policy, in the cases Plaintiffs cite (RB33), the Department did not file a Statement of Interest unprompted.  In one case it was required to do so by treaty, *Ungaro-Benages*, 379 F.3d at 1231, and in the other, the court *requested* the State Department's views, *Mujica*, 771 F.3d at 586.  Plaintiffs quote *Alperin v. Vatican Bank*, 410 F.3d 532, 556 (9th Cir. 2005), for the proposition that Statements of Interest are "not uncommon."  RB34. But the source cited in *Alperin* for this proposition was discussing

"courts … *solicit[ing]* the opinion of the Department of State." *Sarei v. Rio Tinto PLC.*, 221 F. Supp. 2d 1116, 1179 (C.D. Cal. 2002) (emphasis added). Moreover, *Alperin* expressly rejected the argument that State Department silence weighs against dismissal. 410 F.3d at 556.[6]

This Court could solicit the views of the U.S. government if it is uncertain about U.S. interests here. *Cf. Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1361 (9th Cir. 1988) ("invit[ing]" United States to weigh in). Such a step is unnecessary here, however, where the interests of the two sovereigns are clear.

Plaintiffs' final attempt to downplay the U.S. interests here is to assert that because this litigation has not *yet* disrupted relations with Peru, U.S. foreign-policy interests cannot justify abstention. RB35. But diplomatic tensions will likely continue to increase as the district court evaluates *the merits* of Plaintiffs' claims—for instance, when it considers Defendants' argument that the Peruvian government is itself

---

[6] What "weigh[ed] against dismissal" in *GDG Acquisitions, LLC v. Government of Belize* was the absence of *any* discernable "interest favoring the foreign adjudication" of the matter. 749 F.3d 1024, 1032 (11th Cir. 2014). And the discussion Plaintiffs cite from *Gross v. German Foundation Industrial Initiative*, RB33, was about the political-question doctrine. 456 F.3d 363, 376 (3d Cir. 2006).

23

responsible for Plaintiffs' injuries. *Supra* 16-17. Because the whole point of comity abstention is to *prevent* disruptions to foreign relations, this Court need not wait for Peru to instigate an international crisis to find dismissal warranted.

**b.** Like the district court, Plaintiffs focus mainly on Missouri's interest. But state interests—as opposed to U.S. interests—have minimal weight in the *international* comity analysis. OB43-44. Plaintiffs suggest (RB35) that this Court held otherwise in *Reid-Walen v. Hansen*, 933 F.2d 1390 (8th Cir. 1991). But *Reid-Walen*, as a forum non conveniens case, does not speak to the weight of state interests *compared to U.S. federal interests* when assessing international comity. Regardless, the State of Missouri has declared in an amicus brief that "the State lacks any substantial interest in this case proceeding in Missouri." Missouri Amicus Br. at 1.

Plaintiffs unsuccessfully minimize Missouri's position. First, they characterize the Attorney General's assessment of the facts as "skewed." RB37. Essentially, Plaintiffs ask this Court to find that the Attorney General's Office weighed in without bothering to understand the case. There is no basis for any such finding. Next, Plaintiffs claim

24

"Missouri's Supreme Court, not its Attorney General, is the authority on Missouri law." RB38. But at issue here are Missouri's *sovereign interests*, which the Executive Branch is well-suited to address. Mo. Rev. Stat. § 27.060 (detailing Attorney General's authority to assert "the rights and interests of the state"). At any rate, the Missouri Supreme Court has observed that "Missouri's interest in assuring that its corporations comply with" applicable law when acting abroad "is less substantial than [a] foreign nation's interest in protecting its citizens from injury and setting standards … within its borders." *Acapolon Corp. v. Ralston Purina Co.*, 827 S.W.2d 189, 194 (Mo. 1992); OB42.

Plaintiffs bury in a footnote the response that *Acapolon* "was a forum-non-conveniens case applying Guatemalan law." RB36 n.14. They do not explain why the Missouri Supreme Court would reach a different conclusion in the international-comity context. If anything, the reduced role of state interests in the comity analysis, *supra* 24, shows Missouri's interests here are even *less* than in *Acapolon*. As for the suggestion that *Acapolon* and cases like it are distinguishable because they involve the application of foreign law, RB36, that is doubly wrong. *Acapolon* did not resolve what law would apply to the parties'

25

dispute. 827 S.W.2d at 194. More important, *this* case involves the application of foreign law—the PAMA and Article 1971. Add.25-26 (acknowledging Peru's "more significant" interest in the application of Article 1971).

As for Plaintiffs' allegation that Defendants were directly controlling the La Oroya complex from Missouri, RB48, even if that were true (and it is not), it would not give Missouri a greater interest in the operation of the La Oroya complex than Peru, for the reasons discussed above (at 13-14). The district court has recognized that, even if Defendants controlled the La Oroya complex, Article 1971 and the PAMA govern its operation. Add.23-26. Thus, Plaintiffs must show a violation of Peruvian law as to the complex's operation as a prerequisite to any recovery. Add.25-26. Only after finding a violation of Peruvian law would a factfinder reach the question of who is liable for that violation. OB45-47. Plaintiffs do not dispute any of that. Because Missouri's interests come into play only at the allocation-of-liability stage, they are substantially less significant than Peru's interest in the primary legal violation in its territory. OB45-47. Plaintiffs' only response to this point is that one available form of liability is called

26

"direct liability." RB37. We have already explained why that label is not material. OB46 n.8.

### 3. Peru is an adequate forum and dismissal would promote judicial economy.

As detailed in the opening brief, Peru is an adequate forum. OB47-49. If there were any question about Defendants' amenability to suit in Peru, the district court abused its discretion in finding Peru an inadequate forum instead of conditioning dismissal on consent to jurisdiction in Peru. *Mizokami Bros. of Arizona, Inc. v. Mobay Chem. Corp.*, 660 F.2d 712, 719 (8th Cir. 1981). Plaintiffs cast Defendants' request for conditional dismissal as insufficient because Defendants argued individual-officer Defendants were not "necessary" to suit in Peru. RB42. This Court rejected a similar argument in *Mizokami Brothers*, holding the appropriate resolution is to dismiss conditionally, not to find the foreign forum inadequate. 660 F.2d at 719.

As to judicial economy, Plaintiffs incorrectly assert they would need "to start over in Peru." RB42. But in 15 years, this case has barely progressed. OB49-50. Defendants' discovery production is easily transferrable to Peru, often with the click of a button. Hardly any Plaintiffs'-side fact discovery has been conducted, and what fact

27

discovery remains—from thousands of plaintiffs living in a remote region of Peru—will be a herculean task. OB49-50. Plaintiffs' counsel have shown as much by seeking at least 20 extensions to furnish the most rudimentary discovery from their Peru-based clients. R.Docs.135, 173, 199, 232, 247, 277, 344, 352, 360, 382, 394, 403, 426, 496, 585, 699, 780, 850, 885, 928. Worse, continuing to litigate this case in Missouri would require *thousands* of Peruvian plaintiffs to travel to Missouri. In contrast, continuing this litigation in Peru would require a handful of individuals to travel. Clearly, it is far more efficient to complete this litigation in Peru.

## C. The district court's emphasis on the lack of "true conflict" was legal error.

As the opening brief explained, the district court erroneously focused on the absence of a "true conflict" between Missouri and Peruvian law because it misread *Hartford Fire Insurance Co. v. California*, 509 U.S. 764 (1993). OB50-53. Plaintiffs' own amici "agree with Defendants that *Hartford*'s 'true conflict' requirement applies only to prescriptive comity," *not* adjudicatory comity. Dodge Amicus Br. at 8 n.3.

Instead of engaging with the district court's clear legal error, Plaintiffs claim Defendants' choice-of-law analysis somehow invited that error by identifying a conflict between Peruvian and Missouri law. RB43-45. But choice-of-law and comity are different doctrines; Defendants' discussion of relevant legal conflicts for choice-of-law purposes was not a concession that international comity abstention requires a "true conflict."

### D. *Nestlé* reinforces that Plaintiffs' claims do not belong in the United States.

**1.** Our opening brief explained that international comity abstention is appropriate when conduct would be extraterritorial under the Supreme Court's extraterritoriality jurisprudence. OB53-54. The district court agreed. Add.54. The close parallels between this case and *Nestlé* reinforce that dismissal on comity grounds is required here. OB54-65.

Plaintiffs' primary response to *Nestlé* is to mischaracterize the factual allegations in that case. RB52-53; *Doe v. Nestle, S.A.*, 906 F.3d 1120 (9th Cir. 2018). On review, the Supreme Court did not hold that the Ninth Circuit had mischaracterized the plaintiffs' allegations. It concluded those allegations amounted to nothing but "generic

29

allegations" of "corporate activity." 141 S. Ct. at 1937. Plaintiffs cannot minimize *Nestlé*'s holding by speculating the Supreme Court ignored the facts pled.

**2.** Plaintiffs next try to cast this case as having a stronger U.S. nexus than *Nestlé*, but their efforts fall short. As for Plaintiffs' observation that Defendants are U.S. citizens, RB47-48, the defendants in *Nestlé* were U.S. corporate citizens too, 141 S. Ct. at 1935. This cannot create the requisite nexus to the United States.

Plaintiffs next detail Defendants' alleged conduct in the United States. RB48-52. Plaintiffs tellingly ignore their own expert's admission that "[t]he people at Doe Run Peru were in charge of the operations at Doe Run Peru" and that "the president of Doe Run Peru ran Doe Run Peru." OB59. And their colorful descriptions cannot disguise that the types of corporate activity they describe—like reviewing expense requests—are typical of parent-corporation supervision, *United States v. Bestfoods*, 524 U.S. 51, 71-72 (1998), and do not show a sufficient nexus to the United States. OB58-65.

For example, what Plaintiffs characterize as Defendants "issu[ing] directives" to Doe Run Peru, RB48, was a suggestion that Doe Run Peru

30

"develop a long-term plan regarding lead abatement"; Doe Run Peru's General Manager and President Bruce Neil was "asked to lead the effort," Pls.App.234-35; R.Doc.871-71, at 4-5. Far from showing U.S.-based control, this shows Doe Run Peru personnel running Doe Run Peru. Similarly, Plaintiffs accuse Defendants of "line edit[ing]" a submission to the Peruvian government, RB49. In reality, Renco provided a comment on the draft submission. R.Doc.1279-44. A corporate parent's input on a regulatory filing hardly shows *direct control* over the subsidiary's operations. *Compare also* OB63-64 (addressing Vornberg's role as an environmental consultant), *with* RB49.

Some of Plaintiffs' descriptions of the record are not just colorful, but inaccurate. For example, Plaintiffs are wrong to assert that Defendants denied expenditure authorizations for environmental projects. RB9, RB49; *contra* OB60. One of the cited requests—for money to pave an access road—was *approved*. Pls.App.258; R.Doc.1279-60, at 13. The other was not denied, but "Returned" to Doe Run Peru, Pls.App.255; R.Doc.1279-57, at 8. Such requests could be approved

Appellate Case: 23-1625    Page: 38    Date Filed: 10/23/2023 Entry ID: 5328785

upon amendments "clarify[ing]" the request, *e.g.*, R.Doc.1279-60, at 8.

Similar misstatements of the summary judgment record abound.[7]

As a last-ditch effort, Plaintiffs suggest it would be improper for this Court to review the record evidence on U.S. nexus. RB50-51. Plaintiffs' analogy to qualified-immunity cases is inapt. Jurisdiction in qualified-immunity appeals is strictly limited. *Taylor v. St. Louis Cmty. Coll.*, 2 F.4th 1124, 1127 (8th Cir. 2021). Jurisdiction in an appeal under § 1292(b) is not so limited. *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996). Accordingly, this Court can review the record here, and the record shows this case lacks the requisite U.S. nexus to proceed in the United States.

## II. This Court Cannot And Should Not Overrule The Doctrine of International Comity Abstention.

After exhaustively examining the precedents applying international comity abstention, Plaintiffs' brief takes an odd turn and insists the doctrine does not exist. RB53-58. Plaintiffs are wrong.

---

[7] Plaintiffs also cite R.Doc.909-24 as showing that "Defendants (not Doe Run Peru)" made decisions about Doe Run Peru's operations. RB48. The cited document is a Doe Run *Peru* business plan prepared by a Doe Run *Peru* employee and sent to Doe Run *Peru*'s President and General Manager.

32

Since 1885, the Supreme Court has recognized that federal courts have the power to "use [their] discretion whether to exercise jurisdiction or not" based on "international comity." *The Belgenland*, 114 U.S. 355, 363-64 (1885).[8] And the Court repeatedly reaffirmed the principle of comity abstention. *E.g.*, *Canada Malting Co. v. Patterson S.S.*, 285 U.S. 413, 419 (1932) (approvingly citing *The Belgenland*); *Hartford Fire*, 509 U.S. at 817 (Scalia, J., dissenting) (discussing "the comity of courts, whereby judges decline to exercise jurisdiction over matters more appropriately adjudged elsewhere," a principle not disputed by the majority). The U.S. government, too, has reiterated that "courts have discretion in appropriate cases to abstain on comity grounds from exercising jurisdiction," tracing its origins to *The Belgenland*. Brief of the United States as Amicus Curiae, *Republic of Hungary v. Simon*, No. 18-1447, 2020 WL 5535982, at *11-12 (U.S. Sept. 11, 2020).

Because the Supreme Court has said nothing to alter *The Belgenland*'s status as binding precedent, Plaintiffs' effort (RB54-55) to cast the circuits as disagreeing about the doctrine's legitimacy is

---

[8] While *The Belgenland* is also credited with recognizing the doctrine of forum non conveniens, it separately recognized international comity abstention.

Appellate Case: 23-1625      Page: 40      Date Filed: 10/23/2023 Entry ID: 5328785

misplaced.  It is also wrong.  No circuit has rejected international comity abstention.  All agree courts may abstain on comity grounds, though they sometimes disagree about *when* abstention is warranted.  *See, e.g., GDG Acquisitions*, 749 F.3d at 1034; *Gross*, 456 F.3d at 393.

Plaintiffs further mistakenly suggest abstention is impermissible for damages claims.  RB54.  *The Belgenland* itself involved a damages claim and discussed precedents involving damages claims.  114 U.S. at 361, 363-64.  And the Supreme Court rejected the limitation Plaintiffs now urge in *Canada Malting*, explaining "[c]ourts of equity *and of law*" have authority to "decline … to exercise jurisdiction."  285 U.S. at 423 (emphasis added).  *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 718-21 (1996), RB54, is not to the contrary.  The Supreme Court there explained that abstention doctrines *involving parallel state proceedings* permit staying, not dismissing, damages actions pending related state-court proceedings.  *Id*.  *Quackenbush* did not discuss comity abstention or overrule *The Belgenland*.

Unsupported by law, the rest of Plaintiffs' objections to international comity abstention are all policy arguments.  Plaintiffs first claim comity abstention intrudes on Congress's prerogative to

34

define the scope of federal jurisdiction.  RB55.  This argument is not unique to comity abstention and the Supreme Court has repeatedly rejected it.  *Supra* 33-34.

Next, Plaintiffs contend that comity abstention intrudes on the Executive's prerogative to set foreign policy.  RB55-56.  But comity abstention does not privilege courts over the political branches in the conduct of foreign relations.  It helps ensure *private litigants* do not impede U.S. foreign policy.  OB19-20.  Without comity abstention, there would be no mechanism to dismiss cases that interfere with foreign relations—even when the political branches support dismissal.

That is why other doctrines cannot supplant international comity. *Contra* RB57-58.  For example, under the act-of-state doctrine, a U.S. court cannot "declare invalid the official act of a foreign sovereign performed within its own territory"— even if a case involves exclusively U.S. parties and injuries sustained in the United States.  *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990).  That narrow doctrine is not a substitute for comity abstention.

Similarly, forum non conveniens is distinct from comity abstention.  The former is about "the convenience to the parties and the

35

practical difficulties" of litigation, *Quackenbush*, 517 U.S. at 723, while the latter is about respect for another sovereign, OB19-20. It is the affront to Peruvian sovereignty from adjudicating this case in the United States that compels the comity dismissal here, and not the lack of convenience of the parties (although a forum non conveniens dismissal would also be fully warranted).

Appellate Case: 23-1625    Page: 43    Date Filed: 10/23/2023 Entry ID: 5328785

# CONCLUSION

This Court should reverse and remand with instructions to dismiss the case.

Respectfully submitted,

*/s/ E. Joshua Rosenkranz*

| | |
|---|---|
| Edward L. Dowd, Jr. | E. Joshua Rosenkranz |
| James F. Bennett | ORRICK, HERRINGTON & |
| Jeffrey R. Hoops | SUTCLIFFE LLP |
| DOWD BENNETT LLP | 51 West 52nd Street |
| 7733 Forsyth Boulevard | New York, NY 10019 |
| Suite 1900 | (212) 506-5000 |
| St. Louis, MO 63105 | |
| | Robert M. Loeb |
| Thomas P. Berra, Jr. | ORRICK, HERRINGTON & |
| Michael Hickey | SUTCLIFFE LLP |
| LEWIS RICE LLC | 1152 15th Street NW |
| 600 Washington Avenue | Washington, DC 20005 |
| Suite 2500 | |
| St. Louis, MO 63101 | Andrew T. Bayman |
| | Geoffrey M. Drake |
| Tracie Jo Renfroe | KING & SPALDING LLP |
| KING & SPALDING LLP | 1180 Peachtree Street NE |
| 1110 Louisiana Street | Suite 1600 |
| Suite 4100 | Atlanta, GA 30309 |
| Houston, TX 77002 | |

*Counsel for Defendants-Appellants*

October 23, 2023

# CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 6,496 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

This brief has been scanned for viruses pursuant to Eighth Circuit Local Rule 28A(h)(2) and is virus-free.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ E. Joshua Rosenkranz*
E. Joshua Rosenkranz
*Counsel for Defendants-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on October 23, 2023.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ E. Joshua Rosenkranz*

E. Joshua Rosenkranz
*Counsel for Defendants-Appellants*